2025 IL App (3d) 240489

Opinion filed June 27, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| GRETCHEN FRITZ, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Petitioner, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-24-0489 |
| | ) | Circuit No. 22-MR-421 |
| LAUREN STALEY FERRY, Individually and | ) | |
| in Her Capacity as Will County Clerk, | ) | |
| | ) | |
| Respondent-Appellant | ) | |
| | ) | Honorable |
| (David J. Shestokas, Citation Respondent- | ) | James B. Harvey, |
| Appellee). | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court, with opinion.
Justices Hettel and Peterson concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        In December 2022, petitioner Gretchen Fritz filed a verified petition to contest the November 2022 Will County Clerk election. The circuit court dismissed the petition. The court also sanctioned petitioner and her attorney, David J. Shestokas, under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018)), awarding respondent, Lauren Staley Ferry, $35,000 in attorney fees. Petitioner appealed but later voluntarily dismissed the appeal. On Shestokas's motion, we allowed him to be substituted as a party-appellant. We later dismissed Shestokas's appeal by minute order,

based on his failure to comply with the Illinois Supreme Court rules. *Fritz v. Staley Ferry*, No. 3-23-0344 (2024) (unpublished minute order under Illinois Supreme Court Rule 23(c)).

¶ 2 While the appeal was pending, respondent commenced supplementary proceedings by issuing citations to discover assets to petitioner and Shestokas. During those proceedings, Shestokas was granted permission to post an appeal bond of $45,000. After our mandate issued, the circuit court entered a turnover order, directing the clerk to disburse $35,000 to respondent. The court later taxed costs against Shestokas but denied respondent's request for attorney fees relating to the supplementary proceedings.

¶ 3 Respondent appeals, arguing the circuit court erred when it refused her request for attorney fees relating to the supplementary proceedings. Specifically, respondent contends section 2-1402(h) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402(h) (West 2022)) allows the court to award attorney fees as "costs." Alternatively, she asserts Shestokas's conduct during the supplementary proceedings warranted a sanction, in the form of attorney fees, under Illinois Supreme Court Rule 277(h) (eff. Oct. 1, 2021). We disagree on both points and, therefore, affirm the court's judgment.

¶ 4 I. BACKGROUND

¶ 5 A. Proceedings Related to the Original Sanctions Judgment

¶ 6 Petitioner was a candidate for Will County Clerk in the November 2022 general election. She lost to respondent, who was the incumbent, by more than 13,000 votes.

¶ 7 On December 28, 2022, petitioner filed a verified petition to contest the election. See 10 ILCS 5/art. 23 (West 2022). Petitioner initially named respondent in both her individual capacity and her official capacity as Will County Clerk; she later dismissed her claim against respondent in

2

her official capacity. Petitioner alleged the vote totals were "artificially contrived according to a predetermined plan or algorithm" and what resulted was not a "free and fair election."

¶ 8        Respondent moved to dismiss. 735 ILCS 5/2-615 (West 2022). After briefing, the court dismissed the petition without prejudice. Petitioner elected to stand on her original petition, and the court entered the dismissal with prejudice.

¶ 9        Respondent moved for sanctions under Rule 137. She sought $40,047.25 in attorney fees. The parties waived an evidentiary hearing but presented arguments. On June 26, 2023, the court awarded respondent $35,000 in attorney fees (the sanctions judgment), entering judgment jointly and severally against petitioner and Shestokas.

¶ 10        On July 25, 2023, Shestokas filed a notice of appeal on petitioner's behalf. On November 9, 2023, he filed her brief, challenging both the election contest's dismissal and the sanctions judgment. On December 27, 2023, petitioner—through substitute counsel—filed a motion in this court to dismiss her appeal. On January 2, 2024, Shestokas filed a motion in this court asking to be added as a party appellant. On February 23, 2024, we granted both motions. We also struck the brief filed on petitioner's behalf and ordered Shestokas to file a brief (limited to challenging the propriety and amount of the sanctions judgment) by March 29, 2024.

¶ 11        By April 17, 2024, however, Shestokas had not filed a brief or sought an extension of time, so we dismissed the appeal. *Fritz*, No. 3-23-0344; see Ill. S. Ct. R. 341 (eff. Oct. 1, 2020); R. 375(a) (eff. Feb. 1, 1994). Before our mandate issued, Shestokas filed successive motions to vacate the April 17 dismissal order. We denied both motions, and our mandate issued on May 30, 2024.

¶ 12        B. Supplementary Proceedings

¶ 13        In the meantime, on September 28, 2023, respondent commenced supplementary proceedings by issuing citations to discover assets to petitioner and Shestokas. 735 ILCS 5/2-1402

3

(West 2022); Ill. S. Ct. R. 277 (eff. Oct. 1, 2021). The citations directed petitioner and Shestokas to appear at the courthouse for an examination on November 13, 2023, to determine whether they had any income or assets to pay the judgment. The citations also directed them to complete and bring to court an attached income and property statement, along with supporting documents, that would facilitate the examination.

¶ 14       On November 13, 2023, petitioner and Shestokas appeared on the citations. They did not bring completed income and property statements. Shestokas informed the court that, because he and petitioner were held jointly and severally liable for the sanctions, he and petitioner now had conflicting interests. The court agreed. Thus, it allowed petitioner 28 days to retain new counsel. It also allowed Shestokas 28 days to retain counsel. The court continued the matter to December 11, 2023.

¶ 15       On November 16, 2023, respondent moved for an order compelling petitioner and Shestokas to complete the income and property statements. On November 27, the court granted the motion, ordering petitioner and Shestokas to complete the statements before the December 11 court date.

¶ 16       On the eve of the December 11 hearing, petitioner and Shestokas each retained counsel. At the hearing, they did not tender their completed income and property statements. Petitioner's counsel and Shestokas's counsel told the court they had just been retained. Shestokas's counsel told the court he had spoken with respondent's counsel, and respondent's counsel had "assented to let [him] have until early January to take [his] next steps." Respondent's counsel did not object to Shestokas's representation that he had "assented" to a continuance but noted Shestokas had not completed the income and property statement as required by the November 27 order. The court asked Shestokas's counsel how much time he needed to complete the statement, and counsel asked

4

the court to allow him until the first week of January to complete it. Following the discussion, the court entered an order, granting Shestokas "leave to answer or otherwise respond to the citation on or before January 3, 2024" and continuing the matter to that date.

¶ 17    On December 12, 2023, petitioner filed her income and property statement.

¶ 18    In the early morning hours of January 3, 2024, Shestokas moved for an extension of time to respond to the citation. He requested an extension to January 23, 2024. Later that morning, the parties appeared before the court. Shestokas did not tender his completed income and property statement. Without discussing the motion for an extension of time, the court transferred the matter to a different judge and continued the proceedings to January 23.

¶ 19    On January 23, 2024, the parties appeared before the new judge. Shestokas again did not tender his completed income and property statement. Shestokas's counsel informed the court he had ready for filing a motion to quash and, alternatively, to stay the supplementary proceedings pending the resolution of the first appeal. At the parties' request, the court entered a briefing schedule on Shestokas's motion and set the motion for hearing on March 12, 2024.

¶ 20    Shestokas filed the motion. He sought a stay under Illinois Supreme Court Rule 305 (eff. July 1, 2017) and, alternatively, a reasonable amount of time to obtain an appeal bond. The parties briefed the motion. After the March 12 hearing, the court denied the motion and continued the matter to April 9, 2024, "for further proceedings."

¶ 21    On April 9, 2024, the court entered an order, by agreement, which gave Shestokas leave to post an appeal bond of $45,000 by May 9, 2024. The court also continued the matter to May 16, 2024.

¶ 22    On April 22, 2024, respondent filed a motion to advance the proceedings. She noted this court had entered an order dismissing the first appeal and asked the trial court to require Shestokas

5

to post any bond sooner than the agreed May 9 deadline. On April 30, 2024, the court denied respondent's motion to advance.

¶ 23 On May 13, 2024, Shestokas deposited a $45,000 cashier's check with the clerk. On May 16, 2024, the parties appeared before the court. Again noting the appeal had been dismissed, respondent made an oral request for a turnover order. Because our mandate had not yet issued, the court denied the motion.

¶ 24 On May 28, 2024, the clerk entered the following notation in the docket: "Non Sufficient Funds - Ck 2989 for $45,000." The next day, respondent filed a petition for rule to show cause, seeking an order holding Shestokas in contempt for posting the bond with a check that was returned for nonsufficient funds. On May 31, 2024, respondent moved for a turnover order, noting the appellate mandate issued on May 30, 2024. Respondent asked that the entire $45,000 bond be paid over to her counsel. Respondent's petition and motion were scheduled for presentment on June 11, 2024.

¶ 25 On that date, the court and the parties discussed the clerk's May 28 notation in the docket. Shestokas's counsel told the court that he investigated after being informed of the clerk's notation. By the time he spoke to the circuit clerk's office, the funds were on deposit. The court confirmed with its clerk that the funds were present as of May 31. Accordingly, the court denied the petition for rule to show cause as moot.

¶ 26 As to the motion for a turnover order, respondent contended it was proper to order the turnover of the entire $45,000 bond, consisting of $35,000 for the sanctions judgment and $10,000 in "legal fees." Petitioner objected to respondent's request insofar as it sought turnover of the $10,000 that exceeded the judgment. The court entered an order directing the clerk to disburse $35,000 to respondent's counsel and hold the remaining $10,000 pending further proceedings.

6

¶ 27        On June 13, 2024, respondent's counsel filed a "motion for costs (fee petition) and turnover order." Respondent's counsel stated his firm had expended 102.7 hours in enforcing the citation. Counsel sought $24,577 in "attorneys' fees and costs" and asked the court to direct the clerk to turn over the remaining bond and to enter judgment for $14,577. Respondent's counsel contended "[t]he costs and fees for such attorney work is authorized" by section 2-1402(h) of the Code (735 ILCS 5/2-1402(h) (West 2022)). Additionally, counsel noted Shestokas had never completed the income and property statement. Counsel asserted that, until Shestokas posted the appeal bond with the clerk, Shestokas was in contempt of the court's November 27, 2023, order requiring him to complete the income and property statement by December 11, 2023. Therefore, counsel contended, attorney fees should be awarded as a sanction under Illinois Supreme Court Rule 277(h) (eff. Oct. 1, 2021).

¶ 28        On July 16, 2024, after briefing and oral argument, the court granted respondent's motion in part, awarding respondent's counsel $389.94 in unitemized "costs." The court denied the motion insofar as it sought attorney fees. The court gave no reasons for denying the request for attorney fees. The court directed the clerk to disburse $389.94 to respondent's counsel and to refund the remaining $9,610.06 to Shestokas.

¶ 29        The court later granted respondent's motion to stay the July 16 order, and this appeal followed.

¶ 30                                    II. ANALYSIS

¶ 31        Respondent contends the court erred when it refused her request for attorney fees relating to the supplementary proceedings. Specifically, she argues her attorney fees were recoverable as "costs" under section 2-1402(h) of the Code. Alternatively, she argues the court should have

7

awarded her attorney fees as a sanction under Rule 277 because Shestokas's conduct during the supplementary proceedings was demonstrably contumacious.

¶ 32                                A. Supplementary Proceedings Generally

¶ 33         Section 2-1402 of the Code authorizes a judgment creditor to commence supplementary proceedings for the purpose of discovering assets that may be applied to satisfy a judgment. The supplementary proceedings may be directed against the judgment debtor or a third party whom the judgment creditor believes holds assets belonging to the judgment debtor. 735 ILCS 5/2-1402(a) (West 2022). The legislature gave our supreme court authority to adopt rules governing supplementary proceedings. *Id.* Accordingly, the court adopted Rule 277 (Ill. S. Ct. R. 277 (eff. Oct. 1, 2020)), which sets forth the procedures for supplementary proceedings. The statute and rule function together to create an expeditious process for satisfying a money judgment. See *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d 307, 313-14 (1989).

¶ 34         A supplementary proceeding against a judgment debtor begins when the judgment creditor serves the judgment debtor with a citation to discover assets issued by the circuit clerk. 735 ILCS 5/2-1402(a) (West 2022); Ill. S. Ct. R. 277(a) (eff. Oct. 1, 2021). Once served, the citation compels the judgment debtor to appear for an examination under oath that is aimed at discovering assets that may be applied to the judgment. 735 ILCS 5/2-1402(a), (b) (West 2022); Ill. S. Ct. R. 277(c)(3) (eff. Oct. 1, 2021). To facilitate the examination, the citation directs the judgment debtor to complete an income and property statement in a form prescribed by statute (which must be served with the citation) and to bring documents substantiating the information in the statement. 735 ILCS 5/2-1402(b-1), (b-5) (West 2022); Ill. S. Ct. R. 277(c)(4) (eff. Oct. 1, 2021).

¶ 35         If the examination demonstrates the judgment debtor has nonexempt assets that may be used to satisfy the judgment, the court may enter various orders to apply those assets to the

8

judgment. 735 ILCS 5/2-1402(c) (West 2022); see *id.* § 2-1402(b) (certain property may be exempt from enforcement). Among the orders the court may enter is a turnover order, which compels the judgment debtor to "deliver up" nonexempt property to satisfy the judgment. *Id.* § 2-1402(c)(1) (West 2022).

¶ 36 With this basic understanding, we turn to respondent's contentions in this appeal.

¶ 37  B. "Costs" Under Section 2-1402(h) Do Not Include Attorney Fees

¶ 38 Respondent first contends attorney fees are recoverable as "costs" under section 2-1402(h).

¶ 39   1. *Standard of Review*

¶ 40 This contention requires us to construe section 2-1402(h), as well as Rule 277, both questions of law that we review *de novo*. *People v. Reyes*, 2022 IL App (2d) 190474, ¶ 22. When construing a statute or a court rule, our primary task is to determine and give effect to the drafter's intent. *People v. Copeland*, 2020 IL App (2d) 180423, ¶ 13. The language used by the drafter best indicates that intent. *Id.* Accordingly, when the language is clear, we apply the statute or court rule as written. *Id.* In addition, when a statute and a court rule govern the same subject, we must read them together, presuming they are consistent and harmonious. *Id.*

¶ 41   2. *The Text of Section 2-1402(h) and Rule 277(i)*

¶ 42 Section 2-1402(h) reads as follows:

"Costs in proceedings authorized by this Section shall be allowed, assessed and paid in accordance with rules, provided that if the court determines, in its discretion, that costs incurred by the judgment creditor were improperly incurred, those costs shall be paid by the judgment creditor." 735 ILCS 5/2-1402(h) (West 2022).

Under the statute's plain language, the court must award a judgment creditor its costs in proceedings under section 2-1402(h) unless the court determines the costs were improperly

9

incurred. Significantly, however, the statute states the costs must be "allowed, assessed and paid in accordance with rules." *Id.*

¶ 43    Accordingly, we turn to Rule 277, which governs section 2-1402 supplementary proceedings. *FirstMerit Bank, N.A. v. McEnery*, 2020 IL App (3d) 180287, ¶ 12. Illinois Supreme Court Rule 277(i) (eff. Oct. 1, 2021) specifically enumerates costs that may be awarded to a judgment creditor in supplementary proceedings and how the court may ensure costs are paid:

> "The court may tax as costs a sum for witness', stenographer's, and officer's fees, telephone and video conference service fees, and the fees and outlays of the sheriff, and direct the payment thereof out of any money which may come into the hands of the sheriff or the judgment creditor as a result of the proceeding." *Id.*

¶ 44            3. *Costs in Supplementary Proceedings Do Not Include Attorney Fees*

¶ 45    Reading section 2-1402(h) and Rule 277(i) together, as we must (*Copeland*, 2020 IL App (2d) 180423, ¶ 13), we conclude attorney fees are not "costs" as that term is used in section 2-1402(h). Section 2-1402(h) does not define costs and instead incorporates the rules governing supplementary proceedings. Rule 277(i), in turn, defines the term "costs" for purposes of section 2-1402(h). See Ill. S. Ct. R. 277(i) (eff. Oct. 1, 2021). Conspicuously absent from the recoverable items identified in Rule 277(i) are attorney fees. *Id.* The implication of the drafter's omission is that attorney fees may not be awarded as costs under Rule 277(i). See *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 151-52 (1997) ("Where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions.").

¶ 46    We may not depart from the statute's and the rule's plain language by reading into them something—a fee shifting provision—that neither the legislature nor the supreme court expressed. See *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440-41 (2010). Further, reading a

10

fee shifting provision into the statute and rule would contravene the axiom that, absent explicit statutory authority, the parties to litigation bear their own attorney fees. See, *e.g.*, *Baruxen v. Hacker*, 2025 IL App (5th) 240701, ¶ 13 ("Illinois follows the 'American Rule,' which provides that, in the absence of explicit statutory authority, each party must bear its own attorney fees and costs." (Internal quotation marks omitted.)). Simply put, when the statute and rule are read together, they make clear that the "costs" that may be awarded in supplementary proceedings do not include attorney fees.

¶ 47     Respondent nevertheless argues we should consult dictionaries to determine the meaning of "costs" in section 2-1402(h). To be sure, a court may, in some circumstances, use a dictionary to supply the ordinary and popularly understood meaning of a statutory term. See *People v. Chapman*, 2012 IL 111896, ¶ 24 (court may look to the dictionary "to ascertain the plain and ordinary meaning of [a statutory] term" in the absence of a statutory definition). We note that Black's Law Dictionary, cited by respondent, provides definitions of "costs" that both support and oppose her reading of the statute. See Black's Law Dictionary (11th ed. 2019) ("cost[s]" means "[t]he charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees," which are generally termed "court costs"; "cost[s]" may also mean "[t]he expenses of litigation *** [especially] those allowed in favor of one party against the other"; "legal costs" means "[a]ttorney's fees and other expenditures related to a lawsuit"). We need not turn to the dictionary, however, because Rule 277(i) supplies the meaning of costs in section 2-1402(h).

¶ 48     Respondent also argues *Shales v. T. Manning Concrete, Inc.*, 847 F. Supp. 2d 1102 (N.D. Ill. 2012), supports her argument that attorney fees are "costs" under section 2-1402(h). *Shales* does not persuade us to accept respondent's reading of section 2-1402(h). See *Tortoriello v. Gerald*

11

*Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214, 224 (2008) (a federal district court decision is not binding but may be considered for its persuasive value).

¶ 49    In *Shales*, the district court did not analyze the relevant text of the section 2-1402(h) and Rule 277(i), as we have above. Nor did the court conclude what respondent says it did—that attorney fees are "costs" under section 2-1402(h) of the Code. Rather, the court awarded the judgment creditor its attorney fees *as a contempt sanction* against the judgment debtor who violated the citation's restraining provision by transferring assets and *not as costs* under section 2-1402(h). *Shales*, 847 F. Supp. 2d at 1119-20; see 735 ILCS 5/2-1402(f)(1) (a citation may prohibit a party from "making or allowing any transfer" of nonexempt property until further order of the court or the termination of the proceeding, and the court may "punish" a party who violates this provision "as and for a contempt").

¶ 50    In summary, the supreme court, per its authority under section 2-1402(h), has prescribed via Rule 277(i) what "costs" may be recovered in supplementary proceedings. Absent from the list of assessable "costs" is attorney fees. We conclude the trial court properly determined it could not award respondent her attorney fees under section 2-1402(h).

¶ 51    C. Sanctions Were Not Warranted Under Rule 277(h)

¶ 52    Alternatively, respondent contends the circuit court should have awarded her attorney fees as a sanction because Shestokas never completed the income and property statement as required by the citation and the November 2023 order granting respondent's motion to compel.

¶ 53    1. *Standard of Review*

¶ 54    Respondent argues we should review *de novo* the court's decision to deny her sanctions under Rule 277(h) because the circuit court "did not conduct an evidentiary hearing or make factual findings." She cites cases which state that proposition nearly verbatim. See *Kauffman v. Wrenn*,

12

2015 IL App (2d) 150285, ¶ 15 ("We review *de novo* a trial court's ruling in supplementary proceedings where the trial court did not conduct an evidentiary hearing or make factual findings."); *McGinley Partners, LLC v. Royalty Properties, LLC*, 2021 IL App (1st) 200390, ¶ 35 ("Where a trial court did not conduct an evidentiary hearing or make factual findings, we review its ruling in supplementary proceedings *de novo*."). However, none of these cases states squarely the proposition that a court's determination of a sanction (if any at all is appropriate) under Rule 277(h) should be reviewed *de novo*.

¶ 55     We turn first to the rule's text. Rule 277(h) reads as follows:

> "Any person who fails to obey a citation, subpoena, or order or other direction of the court issued pursuant to any provision of this rule *may* be punished for contempt. Any person who refuses to obey any order to deliver up or convey or assign any personal property or in an appropriate case its proceeds or value or title to lands, or choses in action, or evidences of debt *may* be committed until he has complied with the order or is discharged by due course of law. The court *may* also enforce its order against the real or personal property of that person." (Emphases added.) Ill. S. Ct. R. 277(h) (eff. Oct. 1, 2021).

The word "may" connotes judicial discretion. See, *e.g.*, *Krautsack v. Anderson*, 223 Ill. 2d 541, 554 (2006). Thus, the rule's plain language commits the determination of an appropriate sanction to the court's discretion, such that abuse of discretion is the appropriate standard of review notwithstanding the absence of an evidentiary hearing and factual findings. See *Kennedy v. Four Boys Labor Services, Inc.*, 279 Ill. App. 3d 361, 371 (1996) (once a failure to obey the citation or a court order is established, the court has "discretion as to the nature of the sanction to impose," and whether the sanction was appropriate is reviewed for abuse of discretion); see also *Seymour v.*

13

*Collins*, 2015 IL 118432, ¶ 48 ("[W]e believe it logically follows that we review a trial court's exercise of discretion for an abuse of discretion.").

¶ 56    Using the abuse of discretion standard here is not only consistent with the rule's plain language. It is also consistent with the standard of review applicable to sanctions imposed under similar court rules. See Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018) (the court "may impose *** an appropriate sanction" upon a party who violates Rule 137); *Father & Sons Home Improvement II, Inc. v. Stuart*, 2016 IL App (1st) 143666, ¶ 58 (decision to impose sanctions under Rule 137 is generally reviewed for an abuse of discretion); Ill. S. Ct. R. 219(c) (eff. July 1, 2002) (the court "may enter *** such orders as are just" and also "may impose *** an appropriate sanction" when a party unreasonably fails to comply with discovery rules or orders); *In re Estate of Andernovics*, 311 Ill. App. 3d 741, 745 (2000) (decision to impose sanctions under Rule 219(c) is generally reviewed for an abuse of discretion).

¶ 57    Nevertheless, to the extent the issue presented requires us to construe Rule 277(h), we will apply *de novo* review. See *Reyes*, 2022 IL App (2d) 190474, ¶ 22. Additionally, *de novo* review is appropriate to the extent we are required to determine whether Shestokas failed to obey the citation and the circuit court's November 2023 order, thus bringing the matter within the rule's confines. See *Edwards v. Pekin Memorial Hospital*, 2023 IL App (3d) 210005, ¶ 33 (legal effect of undisputed facts is reviewed *de novo*). However, consistent with Rule 277(h)'s text and the authority cited above (*supra* ¶¶ 55-56), we will review the circuit court's ultimate decision to deny sanctions for an abuse of discretion.

¶ 58            2. *The Court Did Not Abuse Its Discretion by Refusing to Award Sanctions*

¶ 59    On the merits, respondent contends Rule 277(h) permits the court to impose sanctions on a judgment debtor for violating an order entered in the proceedings, without finding the judgment

14

debtor in contempt. She argues sanctions were warranted for Shestokas's failure to complete the income and property statement as required by the citation and the court's November 2023 order granting her motion to compel. We disagree.

¶ 60    The operative provision here is Rule 277(h)'s first sentence: "Any person who fails to obey a citation, subpoena, or order or other direction of the court issued pursuant to any provision of this rule may be punished for contempt." Ill. S. Ct. R. 277(h) (eff. Oct. 1, 2021). This provision seemingly says a contempt finding is a prerequisite to sanctions under the rule, that is, a sanction can be imposed as a "punish[ment] for contempt."

¶ 61    However, in *Kennedy*, 279 Ill. App. 3d at 371, the Second District concluded a contempt finding was not a prerequisite of sanctions under the rule. Providing little analysis, the court wrote the following:

> "Rule 277(h) does not require a finding of contempt; rather, it merely states that the court *may* punish a person who fails to obey an order by finding that person in contempt. [Citation.] As such, a finding of contempt is not a prerequisite to a sanction pursuant to Rule 277(h)." (Emphasis in original.) *Id.*

Only one other appellate decision has cited this principle. See *Triumph Community Bank v. IRED Elmhurst, LLC*, 2021 IL App (2d) 200108, ¶ 51.

¶ 62    With respect, we question these panels' reading of Rule 277(h). The rule does not state a person who fails to obey a citation, subpoena, or court order may be punished by finding that person in contempt. It states a person who violates the order "may be punished *for* contempt." (Emphasis added.) Ill. S. Ct. R. 277(h) (eff. Oct. 1, 2021). However, we need not decide whether *Kennedy* properly construed this provision of Rule 277(h) because Shestokas does not argue

15

otherwise. Instead, we will assume, for argument's sake only, a contempt finding is not a prerequisite of sanctions under Rule 277(h).

¶ 63  Here, respondent sought sanctions based on Shestokas's failure to complete the income and property statement as directed by the citation and ordered by the court. There is no dispute that Shestokas never completed the income and property statement and, thus, clearly failed to obey the citation and the November 2023 order. Based on his failure, Shestokas was subject to sanctions under the rule. Nothing in the rule, however, requires the court to impose a sanction when a person fails to obey the citation or a court order; whether to impose a sanction remains within the court's discretion. *Id.*; see *Kennedy*, 279 Ill. App. 3d at 371 (circuit court has discretion under Rule 277(h) as to the nature of the sanction to impose); *Triumph Community Bank*, 2021 IL App (2d) 200108, ¶ 51 (same); see also *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 15 (circuit court may, but is not required to, impose a sanction when a party violates Rule 137).

¶ 64  Briefly, we note the court did not explain its decision to deny respondent's request for sanctions. This matters not, however, because our focus is whether the record adequately supports the court's decision. See *Lake Environmental*, 2015 IL 118110, ¶ 16 (an appellate court should focus on whether the record supports the circuit court's decision to deny sanctions under Rule 137, not on the court's specific reasons). The record provides an adequate basis to deny respondent's request for a sanction, and we therefore conclude the circuit court did not abuse its discretion when it declined to sanction Shestokas.

¶ 65  In essence, respondent argues that Shestokas engaged in delay tactics to avoid paying the sanctions judgment and the supplementary proceedings would not have been required but for those tactics. These tactics, she maintains, required her to incur needless attorney fees in seeking to enforce the sanctions judgment. To be sure, more than eight months elapsed between service of

16

the citation and Shestokas's posting the appeal bond. However, the record shows that much of the delay was either permitted by the court or agreed to by respondent.

¶ 66      At the first appearance in the supplementary proceedings, the court allowed petitioner and Shestokas to seek independent counsel, given their apparent conflicting interests, and the court continued the matter to December 11, 2023. Respondent did not object to the continuance. In the meantime, she obtained a court order compelling Shestokas to bring a completed income and property statement due to the December 11 hearing. In any event, respondent essentially consented to this initial delay.

¶ 67      On December 11, Shestokas's new counsel appeared and represented to the court that respondent had "assented" to allowing him until early January to respond to the citation. Respondent did not object to this representation. The court therefore entered an order allowing Shestokas until January 3, 2024, to "answer or otherwise respond to the citation" and continued the proceedings until that date. Respondent agreed to the second delay.

¶ 68      Before the January 3 appearance, Shestokas moved for an extension of time to answer or respond to the citation, asking that he be allowed until January 23 to answer or respond to the citation. The parties appeared. Before the parties could address the motion, the court transferred the case to a different judge and directed the parties to appear on January 23. Respondent did not agree to or protest this order, but we will not attribute this third delay in any part to respondent.

¶ 69      When the parties appeared before the new judge on January 23, Shestokas told the court he was ready to file a motion to quash the citation or, alternatively, stay the supplemental proceedings. Respondent did not press Shestokas's failure to complete the income and property statement at that time. Instead, she requested 28 days to file a written response to Shestokas's motion, and Shestokas requested 14 days to reply. The circuit court ordered a briefing schedule

17

accordingly and—with the parties' agreement—set the motion for hearing on March 12, 2024. Respondent essentially consented to the fourth delay.

¶ 70     At the March 12 hearing, the court denied the motion and continued the matter to April 9, 2024, "for further proceedings." On that date, the parties presented an agreed order. Under the agreed order, Shestokas was granted permission to post a $45,000 bond by May 9, 2024, while the mandate in the first appeal was pending. It also continued the matter to May 16 for status. Thus, respondent agreed to the fifth delay.

¶ 71     Shestokas posted the bond, albeit four days late, on May 13. At that time, the first appeal had been dismissed, but our mandate had not yet issued, meaning Shestokas still had avenues to pursue relief from the sanctions judgment. By posting the bond, however, he had ensured that the sanctions judgment would be paid if not ultimately vacated or reversed by the reviewing court.

¶ 72     We do not condone Shestokas's failure to obey the citation and November 2023 order to the extent respondent did not agree or consent to the delay. However, the record does not establish Shestokas flagrantly disregarded the court's directive and, instead, conducted himself within the bounds of the court's orders and the parties' agreements. At most, only 20 days of the delay between the supplementary proceeding's commencement and Shestokas's posting of the bond can fairly be said to have been over respondent's objection. Under these circumstances, we cannot say the circuit court's decision to deny sanctions was unreasonable. See *Lake Environmental*, 2015 IL 118110, ¶ 16 (a court abuses its discretion when no reasonable person would take its position). Thus, the court did not abuse its discretion when it denied respondent's request for sanctions.

¶ 73                              III. CONCLUSION

¶ 74     For the reasons stated, we affirm the judgment of the circuit court of Will County.

¶ 75     Affirmed.

18

*Fritz v. Staley Ferry*, 2025 IL App (3d) 240489

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 22-MR-421; the Hon. James B. Harvey, Judge, presiding. |
| **Attorneys for Appellant:** | Burton S. Odelson, Jayman A. Avery III, and Patrick N. Roberts, of Odelson, Murphey, Frazier & McGrath, Ltd., of Evergreen Park, for appellant. |
| **Attorneys for Appellee:** | Joseph A. Morris, of Morris & De La Rosa, of Chicago, for appellee. |